**BRATTLEBORO PUBLISHING CO.,**
Appellant,

v.

**WINMILL PUBLISHING CORP.,**
Appellee.

No. 89, Docket 30407.

United States Court of Appeals
Second Circuit.

Argued Oct. 25, 1966.

Decided Nov. 28, 1966.

Arthur B. Hanson, Washington, D. C. (Emmett E. Tucker, Jr., J. Dapray Muir, Washington, D. C., of counsel; James L. Oakes, Brattleboro, Vt., on the brief), for appellant.

John S. Burgess, Brattleboro, Vt., for appellee.

Arthur B. Hanson, Washington, D. C. (Emmett E. Tucker, Jr., J. Drapay Muir, Washington, D. C., of counsel), for the American Newspaper Publishers Association, amicus curiae.

Gerhard P. Van Arkel, Washington, D. C. (Van Arkel & Kaiser, Washington, D. C., of counsel), for the International Typographical Union, amicus curiae.

Donald B. Southard, Keith J. Kulie, Chicago, Ill. (Burmeister & Kulie, Chicago, Ill., of counsel), for the National Association of Advertising Publishers, amicus curiae.

Before LUMBARD, Chief Judge, MOORE and KAUFMAN, Circuit Judges.

KAUFMAN, Circuit Judge:

Appellant publishes a daily newspaper known as the "Brattleboro Daily Reformer" (hereafter Reformer), which is circulated in the environs of Brattleboro, Vermont. Appellee publishes a weekly pamphlet or direct-mail circular known as the "Brattleboro Town Crier" (hereafter Town Crier), and distributes it without charge in the same area. The Reformer contends that through use of a photo off-set printing process, the Town Crier reproduced four advertisements in substantially the same form as had appeared in the Reformer. All the advertisements were published in the Town Crier at the request of the advertisers.

Appellant brought the present action pursuant to 28 U.S.C. § 1338,[1] claiming that the Town Crier had infringed its copyrights in the four advertisements in violation of 17 U.S.C. § 101,[2] and had also engaged in unfair competition and unfair trade practices. Reformer asked the district court to permanently enjoin the Town Crier from any future infringements, and to order it to pay damages and to account for all profits that had resulted from the alleged infringements.

The case was tried before Judge Gibson in the District Court for the District of Vermont. After making certain findings of fact, he concluded that the advertisements could not be copyrighted by the Reformer, and therefore no infringement of any of its copyrights had occurred. He also found that the Town Crier had not been guilty of unfair competition or unfair trade practices, and, accordingly, ordered the suit dismissed. 250 F. Supp. 215 (D.Vt.1966).

In light of the conclusions we reach, it is not necessary to determine the copyrightability of any of the advertisements in question, and we therefore proceed directly to the grounds for our disposition. Section 26 of the Copyright Act, 17 U.S.C. § 26, provides that the "author" of a work "shall include an employer in the case of works for hire." Moreover, Professor Nimmer, in his treatise on copyright law, states that there is a presumption in the absence of an express contractual reservation to the contrary, that the coypyright shall be in the person at whose instance and expense the work is done. Nimmer on Copyright 238 (1964). This so-called "works for hire" doctrine was recognized earlier by the Supreme Court in Bleistein v. Donaldson Lithography Co., 188 U.S. 239, 248, 23 S.Ct. 298, 47 L.Ed. 460 (1903), and was later codified in the Copyright Act. In Bleistein, the Court held that the copyright to certain advertisements created by an employee during the course of his employment, belonged to his employer. While the "works for hire" doctrine has been invoked most frequently in instances involving music publishers, see, e. g., Tobani v. Carl Fischer, Inc., 98 F.2d 57 (2d Cir. 1938), cert. denied, 305 U.S. 650, 59 S.Ct. 243, 83 L.Ed. 420 (1938); Von Tilzer v. Jerry Vogel Music Co., 53 F.Supp. 191 (S.D.N.Y.1943), aff'd sub nom., Gumm v. Jerry Vogel Music Co., 158 F.2d 516 (2d Cir. 1946), it is applicable whenever an employee's work is produced at the instance and expense of his employer. In such circumstances, the employer has been presumed to have the copyright. See, e. g., Sawyer v. Crowell Publishing Co., 46 F.Supp. 471 (S.D.N.Y.1942),

---

1. (a) The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, copyrights and trade-marks. Such jurisdiction shall be exclusive of the courts of the states in patent and copyright cases.

   (b) The district courts shall have original jurisdiction of any civil action asserting a claim of unfair competition when joined with a substantial and related claim under the copyright, patent or trade-mark laws.

2. If any person shall infringe the copyright in any work protected under the copyright laws of the United States such person shall be liable:

   (a) Injunction.—To an injunction restraining such infringement;

   (b) Damages and profits * * *— To pay to the copyright proprietor such damages as the copyright proprietor may have suffered due to the infringement, as well as all the profits which the infringer shall have made from such infringement * * *.

aff'd, 142 F.2d 497 (2d Cir.), cert. denied, 323 U.S. 735, 65 S.Ct. 74, 89 L.Ed. 589 (1944) (map created by a government employee).

■ We see no sound reason why these same principles are not applicable when the parties bear the relationship of employer and independent contractor. "Whether the copyright resides in the person thus commissioning the work or in the independent contractor creating the work will always turn on the intention of the parties where that intent can be ascertained." Nimmer, supra, at 244. Where that intent cannot be determined, the presumption of copyright ownership runs in favor of the employer. Ibid. For example, in Yardley v. Houghton Mifflin Co., 108 F.2d 28 (2d .Cir.), cert. denied, 309 U.S. 686, 60 S.Ct. 891, 84 L.Ed. 1029 (1940), a painter was commissioned to create a mural for the walls of a public school. We held:

> If he is solicited by a patron to execute a commission for pay, the presumption should be indulged that the patron desires to control the publication of copies and that the artist consents that he may, unless by the terms of the contract, express or implicit, the artist has reserved a copyright to himself. Id. at 31.

A similar result was reached with respect to pictures taken by a professional photographer, Lumiere v. Robertson-Cole Distributing Co., 280 F. 550 (2d Cir.), cert. denied, 259 U.S. 583, 42 S.Ct. 586, 66 L.Ed. 1075 (1922), and commercial illustrations designed by an artist for an advertising catalog, Lin-Brook Builders Hardware v. Gertler, 352 F.2d 298 (9th Cir. 1965).

■■ In the present case, appellant admits that 95–98% of the advertisements placed by local merchants and published in the Reformer were created in whole or in part by the paper's staff. The price paid by the advertisers to the Reformer for publishing their advertisements included, in effect, a charge for the paper's preparation of the form, words, and illustrations of the advertisements. In these circumstances, absent an agreement to the contrary, the advertisements could not be copyrighted by the Reformer.[3] See, Inter-City Press, Inc. v. Siegfried, 172 F.Supp. 37 (W.D.Mo. 1958).

■ Moreover, it is clear that the services of Reformer's advertising department were offered as an inducement to the local businessmen to use appellant's paper as a medium of exposing their wares to the public. It is of interest that Reformer's soliciting agents failed to inform any local merchant, whose advertising business was actively sought, that the paper would have exclusive copyright control over his advertisement, and that the advertiser (in all instances a small merchant) would be barred for years to come from reproducing it anywhere without the Reformer's consent. It seems likely that the local businessmen, who often cooperated in designing the advertisements, were naive with respect to the complex provisions of the copyright law, and assumed, because of this naivete, that the price they paid the Reformer for publishing their advertisements entitled them to have the same advertisements published elsewhere. It would be unfair in these circumstances to place the burden on the advertiser; it is far more equitable to require the Reformer to provide by express agreement with the advertisers that it shall own any copyright to the advertisements. Cf., Welles v. Columbia

3. It is wholly irrelevant that the Reformer may have complied with the notice requirements, provided in 17 U.S.C. § 20, necessary to protect all copyrightable material contained in the newspaper. It is clear that such notice would only protect those materials which appellant could properly copyright. In this connection, it is interesting that in Yardley v. Houghton Mifflin Co., supra, the mural in question contained an inscription that the painter had the copyright. We stated, however, that "His subsequent unilateral act in placing on the painting the copyright notice would be ineffective to modify his contract of employment." 108 F.2d at 31. This is equally true in the present case.

Broadcasting System, Inc., 308 F.2d 810 (9th Cir. 1962).

■ We also agree with Judge Gibson's holding that the Town Crier was not guilty of unfair competition or unfair trade practices.

Affirmed.

LUMBARD, Chief Judge (concurring):

I concur in the holding that in the absence of agreement between newspaper publisher and advertiser the advertiser is entitled to the copyright in the advertisement. While I do not believe that this result can be based on the presumption invoked by the Court, that one who commissions a work owns the copyright in it, because the advertisers here did not pay any extra sum for the design and composition of the advertisements, see Altman v. New Haven Union Co., 254 F. 113, 118 (D.Conn.1918), I feel that the parties' probable intent requires this result.

It is the newspaper publisher who copyrights the material in each issue of the newspaper by a single notice somewhere in the issue. See 17 U.S.C. § 3. On the other hand, the great majority of local advertisers, such as those who paid for the advertisements here at issue, have little or no knowledge of copyright law. It is altogether likely that some or all of them were not even aware that such advertisements might be the subject of copyright. It seems equally likely that they would suppose that after the newspaper had prepared and run their advertisements they could use them again. It would not seem likely to occur to such advertisers that the prices they paid might not cover the cost of preparing the advertisements; nor do they have any way of knowing the economics of the situation.

Under these circumstances, it would be an inequitable interpretation of the copyright law to place the burden of inquiry upon advertisers to whom the need for such inquiry would not suggest itself. It is far more practical and equitable to place upon the newspaper publisher the burden of securing the consent of the advertiser that the copyright should be the property of the publisher, if the publisher feels that he should be protected by copyright against the competition of cheap reproduction by others of advertisements his staff has created.